UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GONZALO CASTILLO,<br><br>Plaintiff,<br><br>v.<br><br>EDWARD BORLA, et al.,<br><br>Defendants. | Case No. 24-cv-01245-PCP<br><br>**ORDER GRANTING *IN FORMA PAUPERIS* APPLICATION, DISMISSING COMPLAINT WITH LEAVE TO AMEND IN PART**<br><br>Re: Dkt. No. 7 |

## I. Background

Gonzalo Castillo, an inmate at the Correctional Training Facility in Soledad, California, filed this *pro se* civil rights action under 42 U.S.C. § 1983. For the reasons stated below, the Complaint is dismissed. Dismissal is with leave to amend as to some defendants.

Mr. Castillo provided a thorough factual background to his claims, *see* Compl. at 15–28, which the Court reviewed in full.[1] For purposes of this order, only the relevant portions of that background will be discussed.

Mr. Castillo was treated by Defendant Lauritzen, an ophthalmologist, for vision problems and eye pain. *See generally id*. This treatment included at least three laser surgeries, which occurred on May 8, 2020, June 12, 2020, and October 7, 2021. *See id*. at 23–24. Mr. Castillo informed Defendant Lauritzen that his vision and pain were not addressed by these laser surgeries. *See id*. at 24.

Defendant Lauritzen then performed five traditional surgeries on Mr. Castillo's eye(s). *See*

---

[1] The Court appreciates Mr. Castillo's thorough and clear summary of his experience. If it would be possible for Mr. Castillo to put the facts in chronological order in his Amended Complaint, this would ease the Court's review.

Compl. at 19–24. These surgeries occurred on February 24, 2022, March 22, 2022, April 21, 2022, October 13, 2022, and November 4, 2022. *See id*. Mr. Castillo experienced pain after and even during these surgeries. *See id*. He explains that none of these surgeries helped his vision problems and implies that his vision problems actually worsened. *See id*.

After his second traditional surgery, Mr. Castillo informed Defendant Brignell, his primary care physician, that he was seeing flashes of light. *Id*. at 25. Mr. Castillo was informed this was likely due to stress and had a follow-up appointment with Defendant Lauritzen three days later. *Id*. Mr. Castillo informed a CTF nurse about pain, flashes of light, and blurred vision after his third surgery. *See id*. The nurse informed Defendant Lauritzen, who told Mr. Castillo he would need a fourth surgery. *See id*.

On November 8, 2022, after his fifth unsuccessful surgery, Mr. Castillo informed CTF medical staff that he wanted treatment from a different ophthalmologist. *See id*. at 27. Mr. Castillo filed a healthcare grievance regarding Defendant Lauritzen's treatment on November 11, 2022, and reiterated his position to his primary care physician on November 16, 2022. *See id*. The Complaint implies he had no further appointments with Defendant Lauritzen after raising these issues. Defendant Lauritzen was removed as the ophthalmologist of record on December 9, 2022, and Mr. Castillo was evaluated by his new ophthalmologist on January 3, 2023. *See id*. at 28.

Mr. Castillo's new ophthalmologist had to perform two more surgeries to repair the damage to his eyes. *See id*. at 28–29. The new ophthalmologist noted that the retina in Mr. Castillo's left eye was entirely detached and was torn in multiple places. *See id*.

**II.    Legal Standard**

Federal courts must screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### III. Analysis

Mr. Castillo claims that multiple defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment. *See generally* Compl. The claim against Defendant Lauritzen arises from the multiple unsuccessful surgeries before by that Defendant. The claims against Defendants Bridgnell, Ottenbacher, and Posson, all CTF medical personnel, appear to arise from those Defendants having allowed Defendant Lauritzen to continue treating Mr. Castillo. The claim against Defendant Borla appears to arise from his supervisory position as a warden.

For the reasons stated below, Mr. Castillo has not met the deliberate indifference standard as to any of the medical defendants. More facts may cure the defects identified, so his Complaint is dismissed with leave to amend as to those defendants.

As explained below, as a matter of law Mr. Castillo cannot sue Defendant Borla merely because he supervises other defendants. Defendant Borla is dismissed from this lawsuit without leave to amend.

#### A. Defendant Lauritzen

Mr. Castillo identifies eight surgeries performed on his eye(s) by Dr. Lauritsen, three by laser and five by traditional methods. *See generally* Compl. He alleges that these surgeries did not help his condition, and implies they made it worse. *See id*.

"'The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care," and to "'take reasonable measures to guarantee the safety of the inmates.'" *Id.* A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton, *id*. (citing *Wilson*, 501 U.S. at 297).

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S.

97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104).

A prison official is deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). Consequently, for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060. The deliberate indifference standard does not require a showing that the prison official acted with an improper motive, such as an intent to harm; it is enough that the official acted or failed to act despite knowledge of a substantial risk of serious harm. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 793 (9th Cir. 2019).

Here, Mr. Castillo specifically alleges that Defendant Lauritzen subjected him to "botched operations and negligence." Compl. at 27. A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).[2] If Mr. Castillo wishes to state a federal civil rights claim against Defendant Lauritzen, he must allege facts which meet the deliberate indifference standard. *See Farmer*, 511 U.S. at 832, 834. To do so, Mr. Castillo must show that Defendant Lauritzen knew of and disregarded an excessive risk to Mr. Castillo's health or safety by failing to take reasonable

---

[2] This does not limit Mr. Castillo's ability to pursue a medical malpractice lawsuit in state court.

4

steps to abate it. *Id.* at 837. Refusal to perform a necessary surgery, or insistence on performing a surgery which was contra-indicated, might meet this standard. *But see Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (holding that summary judgment for defendants was properly granted because plaintiff's evidence that a doctor told him surgery was necessary to treat his recurring abscesses showed only a difference of opinion as to proper course of care where prison medical staff treated his recurring abscesses with medicines and hot packs); *Toguchi*, 391 F.3d at 1058 (holding that to show deliberate indifference rather than a difference of medical opinion, a prisoner must "show that [the doctor's] chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health'"). A mistake during a tricky surgery does not.

### B.  Defendants Brignell, Ottenbacher, and Posson

Mr. Castillo similarly does not provide facts to support a deliberate indifference claim against Defendants Brignell, Ottenbacher, and Posson.

Mr. Castillo did not inform Defendant Brignell of continued vision problems until after his second surgery, and Mr. Castillo had a follow-up appointment with Defendant Lauritzen only three days later. See Compl. at 25. The information given to Defendant Brignell would not alert him that Mr. Castillo was uncomfortable being treated by Defendant Lauritzen, and without more facts it appears reasonable for Defendant Brignell to rely on an ophthalmologist to treat Mr. Castillo's eyes. Defendant Brignell thus was not deliberately indifferent for not acting on this statement from Mr. Castillo.

Mr. Castillo did not inform Defendant Brignell until November 8, 2022, that he wanted to cease treatment by Defendant Lauritzen. See Compl. at 27. The Complaint suggests that his concerns were addressed, because he does not mention any additional treatment by Defendant Lauritzen after that date. Indeed, Mr. Castillo states that Defendant Lauritzen was removed as his ophthalmologist of record by December 9, 2022, and Mr. Castillo was appointed a new ophthalmologist before January 3, 2023. *See id*. at 28. This does not suggest that Defendant Brignell was deliberately indifferent to Mr. Castillo's medical needs. Rather, it suggests that when Mr. Castillo raised concerns to his primary care physician, that physician listened and acted upon

those concerns.

It is possible, however, that Mr. Castillo expressed his concerns at an earlier date and simply did not mention this in the Complaint. Although Mr. Castillo has not stated an Eighth Amendment claim as to Defendant Brignell, he is given leave to amend to truthfully add any facts which would support such a claim.

The Complaint states that Defendant Ottenbacher is an ophthalmologist at CTF but does not indicate that Mr. Castillo had any interactions at all with Defendant Ottenbacher. See Compl. at 15, 17. Without such facts, Mr. Castillo has not stated any claim as to Defendant Ottenbacher, much less one for deliberate indifference.

The Complaint alleges that Defendant Posson reviewed Mr. Castillo's health care grievances and denied them. These reviews appear to have occurred after Defendant Lauritzen had been removed as the ophthalmologist of record and a new ophthalmologist had been appointed. *See id*. at 18–19 (referring to reviews on January 3, 2023, January 8, 2023, and February 3, 2023). Mere involvement in reviewing an inmate's administrative grievance does not necessarily demonstrate awareness of an alleged violation or contribute to the underlying violation. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "Only persons who cause or participate in the violations are responsible." *Id.* "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *Id.* Similarly, any failure to properly process or investigate a grievance generally does not constitute a violation of a prisoner's constitutional rights. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("Ramirez's claimed loss of a liberty interest in the processing of his appeals does not satisfy this standard, because inmates lack a separate constitutional entitlement to a specific prison grievance procedure."); *accord Young v. Voong*, 738 F. App'x 509, 510 (9th Cir. 2018) ("Young 'lack[s] a separate constitutional entitlement to a specific prison grievance procedure.'") (citation omitted)." Because there is no allegation that the denial of Mr. Castillo's grievance caused additional harm to him, and Defendant Posson's review did not even occur until after Defendant Lauritzen had been removed as ophthalmologist of record, the claim against Defendant Posson is not cognizable.

The Complaint suggests that Defendants Ottenbacher and Posson are medical providers at

CTF. *See generally* Compl. As such, it is possible that they were more involved in Mr. Castillo's treatment than the alleged facts show. Mr. Castillo is given leave to amend to truthfully add any facts which would support a claim against these two defendants.

### C. Defendant Borla

The Complaint's only allegation against Defendant Borla is that he is the warden of CTF. *See id.* at 2.

Mr. Castillo has not identified any way in which Defendant Borla harmed him. Rather, it appears that Mr. Castillo sues Defendant Borla merely because Defendant Borla is an official in supervisory positions. "In a § 1983 suit …. each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009). Under no circumstances is there liability under section 1983 on the theory that one is responsible for the actions or omissions of another. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is no respondeat superior liability under section 1983."). It is insufficient for a plaintiff generally to allege that supervisors knew about a constitutional violation and that they generally created policies and procedures that led to the violation. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

Because Defendant Borla did not cause Mr. Castillo's injury, the claim against him is dismissed. Because the Court cannot discern any way in which a warden would be responsible for Mr. Castillo's vision care, this dismissal is without leave to amend.

## IV. CONCLUSION

1. The Complaint does not state any cognizable claim. As explained above, only some defects are curable. The Complaint is therefore DISMISSED WITH LEAVE TO AMEND IN PART. If he truthfully can provide facts to support a claim, Mr. Castillo may amend his claims as to Defendants Lauritzen, Bridgnell, Ottenbacher, and Posson. Mr. Castillo may not amend his claims as to Defendant Borla.

2. The AMENDED COMPLAINT shall be filed within **thirty-five days** from the date this order is filed. The amended complaint must include the caption and civil case number used in this order (24-cv-01245-PCP) and the words AMENDED COMPLAINT on the first page. In the

7

consolidated amended complaint, Mr. Castillo must allege facts that demonstrate he is entitled to relief on every claim. An amended complaint supersedes the original complaint. *See London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) ("[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint."); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262–63 (9th Cir. 1992) (where an amended complaint did not name all the defendants to an action, they were no longer defendants).

3.  It is Mr. Castillo's responsibility to prosecute this case. He must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address." He also must comply with the Court's orders in a timely fashion. Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

4.  Mr. Castillo is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

5.  Mr. Castillo's motion to proceed *in forma pauperis* is GRANTED. *See* Dkt. No. 7. The initial partial filing fee is $88.00. *See* 28 U.S.C. § 1915(b)(1) (requiring a court to assess an initial filing fee of 20 percent of a prisoner's average monthly deposits or monthly balance, whichever is greater). A copy of this order and the attached instructions will be sent to Mr. Castillo via U.S. mail, and to the California Department of Corrections and Rehabilitation (CDCR) and the court's financial office via email at trusthelpdesk@cdcr.ca.gov and CAND_Finance@cand.uscourts.gov.

6.  The Clerk shall amend the caption to reflect that Defendant Borla has been dismissed from this action without leave to amend.

**IT IS SO ORDERED.**

Dated: October 16, 2024

P. Casey Pitts
United States District Judge

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

INSTRUCTIONS FOR PAYMENT OF PRISONER'S FILING FEE

The prisoner shown as the plaintiff or petitioner on the attached order has filed a civil action <u>in forma pauperis</u> in this court and owes to the court a filing fee. Pursuant to 28 U.S.C. § 1915, the fee is to be paid as follows:

The initial partial filing fee listed on the attached order should be deducted by the prison trust account office from the prisoner's trust account and forwarded to the clerk of the court as the first installment payment on the filing fee. This amount is twenty percent of the greater of (a) the average monthly deposits to the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition or (b) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition.

Thereafter, on a monthly basis, 20 percent of the preceding month's income credited to the prisoner's trust account should be deducted and forwarded to the court each time the amount in the account exceeds ten dollars ($10.00). The prison trust account office should continue to do this until the filing fee has been paid in full.

If the prisoner does not have sufficient funds in his/her account to pay the initial partial filing fee, the prison trust account office should forward the available funds, and carry the balance forward each month until the amount is fully paid. If the prisoner has filed more than one complaint, (s)he is required to pay a filing fee for each case. The trust account office should make the monthly calculations and payments for each case in which it receives an order granting <u>in forma pauperis</u> and these instructions.

The prisoner's name and case number must be noted on each remittance. The initial partial filing fee is due within thirty days of the date of the attached order. Checks should be made payable to Clerk, U.S. District Court and sent to Prisoner Accounts Receivable, U.S. District Court, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102.

cc:     Plaintiff/Petitioner

Court's Finance Office
United States District Judge