UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GONZALO CASTILLO,<br><br>Plaintiff,<br><br>v.<br><br>EDWARD BORLA, et al.,<br><br>Defendants. | Case No. 24-cv-01245-PCP<br><br>**ORDER OF PARTIAL DISMISSAL AND PARTIAL SERVICE**<br><br>Re: Dkt. No. 11 |

Gonzalo Castillo, an inmate at the Correctional Training Facility in Soledad, California, filed this *pro se* civil rights action under 42 U.S.C. § 1983. The Court concluded that Mr. Castillo's original complaint failed to state any claim and dismissed with leave to amend as to some defendants. Dkt. No. 10.

Mr. Castillo filed an amended complaint alleging claims against Defendants Lauritzen, Bridgnell, Ottenbacher, and Posson. Dkt. No. 11 ("FAC"). For the reasons stated below, the Court dismisses Mr. Castillo's claims against Defendants Ottenbacher and Posson without leave to amend. The Court orders Defendants Lauritzen and Bridgnell to respond to Mr. Castillo's claims.

**I.      Background**

Mr. Castillo provided a thorough factual background to his claims, *see* FAC, which the Court reviewed in full.[1] For purposes of this order, only the relevant portions of that background will be discussed.

Mr. Castillo was treated by Defendant Lauritzen, an ophthalmologist, for vision problems

---

[1] The Court appreciates Mr. Castillo's thorough and clear summary of his experience. If it would be possible for Mr. Castillo to put the facts in chronological order in his Amended Complaint, this would ease the Court's review.

and eye pain. *See generally id*. This treatment included five surgeries on Mr. Castillo's left eye between February 24 and November 4, 2022. *See* FAC at 5–8. Each surgery made Mr. Castillo's eye worse rather than better. *See id*. Mr. Castillo represents that these repeated botched surgeries nearly caused his left eye to die. *See id*. at 12.

During this time, Mr. Castillo also was being seen by his primary care physician, Defendant Bridgnell.[2] *See id*. After each surgery, Mr. Castillo updated Defendant Brignell as to the results he was experiencing, including pain and partial blindness. *See id*. Defendant Brignell informed Mr. Castillo that he was "not a specialist or ophthalmologist." *Id*. at 8. On October 27, 2022, Mr. Castillo told Defendant Bridgnell "that defendant Lauritzen[] keeps making mistakes," and that he was "requesting a new ophthalmologist." *Id*. The fifth surgery was performed on November 4, 2022, one week after Mr. Castillo's request for a new ophthalmologist. *See id*. Mr. Castillo repeated his request for a new ophthalmologist on November 16, 2022, and Defendant Bridgnell attempted to "convince" Mr. Castillo to continue being treated by Defendant Lauritzen. *See id*. at 9. On December 1, 2022, Defendant Bridgnell confirmed that a new ophthalmologist had been requested. *See id*. at 10–11.

On January 3, 2023, Mr. Castillo had his first visit with a new ophthalmologist. *See id*. at 11. The new ophthalmologist performed surgery on Mr. Castillo's left eye on January 18, 2023, to "try[] to save [the] left eye from dying." *Id*.

## II.    Legal Standard

Federal courts must screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

---

[2] Mr. Castillo named doctors Ottenbacher and Posson as defendants, but did not identify any actions taken by either person. *See* FAC at 1-3.

2

### III. Analysis

The claim against Defendant Lauritzen arises from the multiple unsuccessful surgeries before by that Defendant. The claims against Defendant Bridgnell appear to arise from that Defendant's having allowed Defendant Lauritzen to continue treating Mr. Castillo. Mr. Castillo does not identify any actions taken by Defendants Ottenbacher or Posson.

#### A. Defendants Ottenbacher and Posson

The Complaint states that Defendant Ottenbacher is an ophthalmologist at CTF but does not indicate that Mr. Castillo had any interactions at all with Defendant Ottenbacher. *See* FAC at 1–3. In reviewing his original complaint, the Court advised Mr. Castillo that, "[w]ithout such facts, Mr. Castillo has not stated any claim as to Defendant Ottenbacher." Dkt. No. 10 at 6. Because Mr. Castillo failed to remedy this defect in his amended complaint, Defendant Ottenbacher is dismissed from this action.

Likewise, the Court informed Mr. Castillo that his initial complaint failed to state a claim as to Defendant Posson because that defendant had been accused only of reviewing Mr. Castillo's health care grievances. *See id.* (citing cases). Mr. Castillo's Amended Complaint did not identify any direct action taken by Defendant Posson. *See generally* FAC. Defendant Posson therefore is dismissed from this action.

#### B. Defendants Lauritzen and Bridgnell

Mr. Castillo states that Defendant Lauritzen performed five surgeries on his left eye, botched each surgery, and nearly killed Mr. Castillo's left eye. *See* FAC at 5–11. He alleges that Defendant Bridgnell was aware of Defendant Lauritzen's actions and failed to seek a new ophthalmologist for Mr. Castillo, despite requests that he do so. *See id.*

"'The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care," and to "'take reasonable measures to guarantee the safety of the inmates.'" *Id.* A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious,

3

*Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton, *id.* (citing *Wilson*, 501 U.S. at 297).

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104).

A prison official is deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). Consequently, for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060. The deliberate indifference standard does not require a showing that the prison official acted with an improper motive, such as an intent to harm; it is enough that the official acted or failed to act despite knowledge of a substantial risk of serious harm. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 793 (9th Cir. 2019).

A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).[3] However,

---

[3] This does not limit Mr. Castillo's ability to pursue a medical malpractice lawsuit in state court.

4

where a medical provider follows a course of treatment that is "'medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health,'" the prisoner may state an Eighth Amendment claim. *See id*. at 1058. Insistence on performing a surgery which was contra-indicated, might meet this standard. *But see Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (holding that summary judgment for defendants was properly granted because plaintiff's evidence that a doctor told him surgery was necessary to treat his recurring abscesses showed only a difference of opinion as to proper course of care where prison medical staff treated his recurring abscesses with medicines and hot packs).

Here, Mr. Castillo alleges that Defendant Lauritzen performed five surgeries on his left eye in the space of nine months, that each of Defendant Lauritzen's surgeries made Mr. Castillo's left eye worse, and that the left eye nearly died because of these repeated botched surgeries. *See* FAC at 5–11. Mr. Castillo's allegations do not present the Court with an instance where a doctor made a single mistake, but rather an instance where the doctor took at least five actions each of which are alleged to have worsened the patient's condition. Defendant Lauritzen's continued performance of surgery on Mr. Castillo's eye may have been medically unacceptable under the circumstances. Mr. Castillo has alleged enough for the Court to require Defendant Lauritzen to respond to the claims in the Complaint.

Mr. Castillo alleges that he made Defendant Bridgnell aware of the problems with Defendant Lauritzen's treatment and requested a new ophthalmologist. He alleges that Defendant Bridgnell did not request a new ophthalmologist for several weeks, and allowed Defendant Lauritzen to perform a fifth surgery on Mr. Castillo's eye after Mr. Castillo had requested a different ophthalmologist. *See* FAC at 8–10. Defendant Bridgnell's failure promptly to respond to Mr. Castillo's concerns, and his allowance of a fifth surgery by a doctor who had already performed four unsuccessful surgeries, may have been medically unacceptable. Mr. Castillo has alleged enough for the Court to require Defendant Bridgnell to respond to the claims in the Complaint.

## IV.     CONCLUSION

1. Liberally construed, the amended complaint states an Eighth Amendment deliberate indifference claim against defendants Lauritzen and Bridgnell. All other claims and defendants are DISMISSED.

5

2.     The Court orders service of the amended complaint on defendants Lauritzen and Bridgnell and orders them to respond to Mr. Castillo's Eighth Amendment deliberate indifference claim. Service on defendants Lauritzen and Bridgnell shall proceed under the California Department of Corrections and Rehabilitation's ("CDCR") E-Service Program for civil rights cases from prisoners in CDCR custody. In accordance with the program, the Clerk is directed to serve on CDCR via email the following documents: The amended complaint and exhibits thereto (Dkt. No. 11), this order of service, a CDCR Report of E-Service Waiver form, and a summons. The Clerk also shall serve a copy of this order on Mr. Castillo.

3.     No later than **forty (40) days** after service of this order via email on CDCR, CDCR shall provide the Court a Completed CDCR Report of E-Service Waiver advising the Court whether all defendants will be waiving service of process without the need for service by the United States Marshal Service ("USMS"), or whether any defendant declined to waive service or could not be reached.

4.     CDCR shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office which, within **twenty-one (21) days**, shall file with the Court a waiver of service of process for each defendant who is waiving service.

5.     If any defendant does not waive service, then upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare a USM-285 Form. The Clerk shall provide to the USMS the completed USM-285 forms and copies of this order, the summons, and the operative complaint for service upon the non-waiving defendant. The Clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

6.     No later than **ninety (90) days** from the filing date of this order, defendants shall file **one comprehensive motion for summary judgment or other dispositive motion** with respect to the Amended Complaint. Any motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure. A motion for summary judgment also must be accompanied by a separate *Rand* notice so that Mr. Castillo will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice

6

requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment). Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute.

7.   If any defendant is of the opinion that this case cannot be resolved by summary judgment, he or she shall so inform the Court prior to the date the summary judgment motion is due. Information regarding the Court's Alternative Dispute Resolution Program is available on the website for the United States District Court for the Northern District of California.

8.   Mr. Castillo's opposition to the dispositive motion shall be filed with the Court and served on defendants no later than **twenty-eight (28) days** from the date defendants' motion is filed. Mr. Castillo is advised to read Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).

9.   Defendants **shall** file a reply brief no later than **fourteen (14) days** after Mr. Castillo's opposition is filed.

10.   All communications by Mr. Castillo with the Court must be served on defendants or defendants' counsel once counsel has been designated, by mailing a true copy of the document to defendants or defendants' counsel.

11.   Discovery may be taken in accordance with the Federal Rules of Civil Procedure. **No further court order under Federal Rule of Civil Procedure 30(a)(2) is required before the parties may conduct discovery.** Mr. Castillo is advised to read Federal Rule of Civil Procedure 37, which requires each party to "in good faith confer[] or attempt[] to confer with" the opposing party regarding a discovery dispute, before seeking court action to resolve such a dispute.

12.   It is Mr. Castillo's responsibility to prosecute this case. Mr. Castillo must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address." He also must comply with the Court's orders in a timely fashion. Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

The Clerk shall update the caption to reflect that only defendants Lauritzen and Bridgnell

remain in this action.

**IT IS SO ORDERED.**

Dated: July 17, 2025

P. Casey Pitts
United States District Judge